J. S. CURRIE v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS.

No. 1823.      Decided April 8, 1908.

### 1.—Appeal—Inability to Pay Costs—Jurisdiction of Supreme Court.

It is questioned whether the Supreme Court has jurisdiction to determine the issue as to error in failing to dismiss an appeal when it depends on a question of fact as to the sufficiency of proof of appellant's inability to pay costs where his affidavit on that point is controverted. (P. 482.)

### 2.—Practice on Appeal—Inability to Pay Costs—Bill of Exceptions.

It is questioned whether the sufficiency of evidence to entitle a party to appeal without giving bond for costs can be raised in the absence of a bill of exceptions to the action of the trial court preserving the evidence on that issue. (P. 482.)

### 3.—Appeal—Inability to Pay Costs—Burden of Proof.

Where an appellant's affidavit of inability to secure the costs of appeal is controverted, but without denial of its allegations under oath, and no evidence was introduced on the issue, his affidavit made a prima facie case as to his right, and the burden of proof was on the party controverting it. (P. 482.)

### 4—Master and Servant—Furnishing Appliances—Use Intended.

The duty of the master to exercise ordinary care to furnish his servant safe and suitable machinery is to be determined by considering that which was furnished in connection with the use to which the servant, at the time in question, is expected to put it. A turn-table sufficient to handle light locomotives in use when it was constructed may be rendered insufficient by the introduction of heavier engines to which it was not adapted. (Pp. 484, 485.)

### 5.—Same—Turn-Table—Defects—Pleading.

Pleading and evidence in support thereof held sufficient to raise the issue of negligence by a railway company in furnishing a turn-table for locomotive engines, sufficient for those in use when it was constructed, but requiring nicer balancing of the heavier machines later introduced, and then harder to turn and liable to catch against the sides in turning. (Pp. 485, 486.)

### 6.—Evidence—Defective Machinery—Presumption.

In the absence of direct evidence as to the cause of the checking of a turn-table in its revolution, the jury were authorized to infer that it was due to the only cause shown to have existed and to have interfered with its movement on previous occasions. (P. 485.)

### 7.—Negligence—Contributory Negligence.

The fact that care in the accurate balancing of an engine upon the turn-table by the servant operating it might have avoided the danger in its use to turn locomotives heavier than that for which it was adapted, will not necessarily relieve the master from the imputation of negligence in furnishing such machinery. (Pp. 486, 487.)

### 8.—Contributory Negligence—Assumed Risk.

Evidence considered and held not conclusive as to contributory negligence or assumption of risk by servant in placing a locomotive upon a turn-table which required nicety of observation and accurate balancing of the engine to enable it to be worked properly and safely. (Pp. 482–486.)

**9.—Assumed Risk—Known Defects—Statute.**

A *servant* is not precluded from recovery for injury by his previous knowledge of the defect or danger causing it "where a person of ordinary care would have continued in the service with knowledge of the defect and danger." (Act of April 24, 1905, Laws, 29th Leg. p. 386.)    (P. 486.)

**10.—Negligence—Defective Machinery—Charge.**

An *instruction* requiring proof by the servant that the machinery alleged to have caused his injury was "out of repair" was misleading where his claim was substantially that the machinery, a turn-table, was merely insufficient and unadapted to the handling of the heavier engines introduced since its construction; and so, also, of an instruction to find for defendant if the machinery was not "defective in any way." (Pp. 486, 487.)

**11.—Previous Injury—Charge.**

Where *plaintiff* sued for injury to a leg which had received an injury previously, an instruction precluding him from recovery if he was injured "at some other time, or in some other way, or by some other means," was improper.    (P. 487.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Hill County.

Currie sued the railway company for personal injuries. Defendant had judgment which was affirmed on appeal by plaintiff, who thereupon obtained writ of error.

*Morrow & Smithdeal,* for plaintiff in error.—If the evidence showed that appellant knew of the defect he did not assume the risk, but it was a question as to whether he was guilty of contributory negligence. Acts of 29th Leg., Ch. 163, p. 386; Ball v. El Paso, 5 Texas Civ. App., 835; Willis v. McNeil, 57 Texas, 479; Denham v. Trinity Lumber Co., 73 Texas, 78.

The evidence showing that the turn-table in question was defective, and that the engine would not be required to be perfectly balanced thereon unless the table was defective, it was error for the court to submit the issue to the jury as to whether any duty rested upon appellant to avoid the results of defects brought about by the negligence of the defendant, the evidence not showing that appellant knew of such defects. Lee v. Yandell, 69 Texas, 35; Hopkins Bridge Co. v. Burnett, 85 Texas, 20; Wootters v. Kaufman, 73 Texas, 395; Texas & P. Ry. Co. v. Moore, 8 Texas Civ. App., 296; Gulf, C. & S. F. Ry. Co. v. Higby, 26 S. W. Rep., 965; Texas & P. Ry. Co. v. French, 86 Texas, 97.

The court having instructed the jury in the general charge that if the plaintiff was not injured as he claimed to find for the defendant, it was error for the court to specially call the jury's attention to the fact of an injury formerly received by the plaintiff on another road, which the evidence shows did not result in the condition of which plaintiff now complains. Altgelt v. Brister, 57 Texas, 432; Pullman P. C. Co. v. Fowler, 6 Texas Civ. App., 759; Kershner v. Latimer, 64 S. W. Rep., 237; Equitable Mortgage Co. v. Norton, 71 Texas, 689.

The evidence showing without dispute that the plaintiff had

been formerly injured, it was misleading and harmful for the court to tell the jury that unless they believed he had not been injured at some other time or in some other way, to find for the defendant, and same was practically a peremptory instruction for defendant.

*Coke, Miller & Coke* and *Ramsey & Odell,* for defendant in error.—Where the judgment of the trial court is the only one which could have been rendered on the evidence before it, any errors committed on the trial which did not contribute to the plaintiff's failure to establish his cause of action are immaterial and will not be considered. Gaston v. Dashiell, 55 Texas, 519; Lee v. Welborne, 71 Texas, 502; Hussey v. Moser, 70 Texas, 45; City of Galveston v. Morton, 58 Texas, 409; Galveston, H. & S. A. Ry. Co. v. Delahunty, 53 Texas, 212; Bowles v. Brice, 66 Texas, 731; Atkinson v. Ward, 61 Texas, 385; Houston Elec. St. Ry. Co. v. Elvis, 72 S. W. Rep., 216; Frost v. Rothe, 66 S. W. Rep., 575; Allibone v. Fidelity & Cas. Co., 32 S. W. Rep., 569; Davis v. Houston E. & W. T. Ry. Co., 68 S. W. Rep., 733; Laughter v. Laughter, 52 S. W. Rep., 987, 21 Texas Civ. App., 416; Gulf, C. & S. F. Ry. Co. v. Koska, 4 Texas Civ. App., 669; Texas Land & Loan Co. v. Blalock, 76 Texas, 85; Lewis v. Simon, 72 Texas, 470.

There being no evidence of any such defect in appellee's turntable as that alleged by appellant to have been the cause of his injury, there was no issue upon which the cause could have been properly submitted to the jury, and no other judgment could have been rendered than one for the appellee. El Paso & N. W. Ry. Co. v. McComas, 72 S. W. Rep., 629; Washington v. Missouri, K. & T. Ry. Co., 36 S. W. Rep., 779.

The only evidence of any defect in appellee's turn-table upon which appellant is alleged to have been injured being that it was built for smaller engines than that which appellant was undertaking to turn, and that such engines were hard to turn unless properly balanced, and there being no allegation that the appellee was negligent in undertaking to turn a heavy engine on such table, the evidence failed to establish any cause of action upon which a judgment against appellee could have been rendered. San Antonio & A. P. Ry. Co. v. De Ham, 93 Texas, 78; Quintana v. Consolidated, etc., Smelting Co., 14 Texas Civ. App., 352; San Antonio Gas & E. Co. v. Speegle, 60 S. W. Rep., 884.

It being shown from the uncontradicted evidence that the turntable in question was in good condition for use in turning engines of the character of that which appellant was undertaking to turn at the time of his alleged injury if the engine was properly balanced on the table, and that it was the duty of the appellant to see that the engine was properly balanced, the negligence of the appellant in failing to discharge that duty and not that of appellee was the cause of the alleged injury to appellant and no judgment could have been properly rendered against appellee therefor. Matthews v. Missouri, K. & T. Ry. Co., 66 S. W. Rep., 902; St. Louis S. W. Ry. Co. v. Arnold, 87 S. W. Rep., 173; Sanches v. San Antonio & A. P. Ry. Co., 88 Texas, 117; Texas & P. Ry. Co.

v. Hemphill, 86 S. W. Rep., 352; Haas v. Galveston, H. & S. A. Ry. Co., 24 Texas Civ. App., 136; Crawford v. Houston & T. C. Ry. Co., 89 Texas, 92; Wagnon v. Houston & T. C. Ry. Co., 89 S. W. Rep., 1112; St. Louis S. W. Ry. Co. v. Denny, 5 Texas Civ. App., 366; Texas & P. Ry. Co. v. Cumpston, 4 Texas Civ. App., 28; Texas & P. Ry. Co. v. Young, 27 S. W. Rep., 145; St. Louis I. M. & S. Ry. Co. v. Morgart, 45 Ark., 318; McDermott v. Atchison T. & S. F. Ry. Co., 56 Kans., 319; Beckman v. Consolidated Coal Co., 90 Iowa, 252; Eicheler v. Hanggi, 40 Minn., 263; Rowland v. Cannon, 35 Ga., 105; Hudson v. Charleston C. & C. Ry. Co., 55 Fed. Rep., 248; Le Bahn. v. N. Y. C. Ry. Co., 80 Hun, 116.

It being shown from the uncontradicted evidence that the turntable in question was suitable for the purpose for which it was being used when the engine to be turned was properly balanced on the table, and that it was in good condition but a little hard to turn, and that the amount of strength necessary to turn the table, and the position of the engine on the table, as to whether it was properly balanced or not, were matters left to the judgment of the appellant and as easily ascertained by him as by appellee, and such as must necessarily have been known by him in the ordinary and proper discharge of his duty in turning said table, he will be held to have assumed the risk of any accident or injury to himself by reason of the fact that the engine was not properly balanced or the table hard to turn. Texas & P. Ry. Co. v. Hemphill, 86 S. W. Rep., 350; International & G. N. Ry. Co. v. Story, 62 S. W. Rep., 132; Mexican Cent. Ry. Co. v. Shearn, 18 S. W. Rep., 151; Gulf, C. & S. F. Ry. Co. v. Williams, 72 Texas, 164; Gulf, C. & S. F. Ry. Co. v. Johnson, 83 Texas, 630; Green v. Eddy & Cross, 79 Texas, 132; Rogers v. Galveston City Ry. Co., 76 Texas, 502; International & G. N. Ry. Co. v. McCarthy, 64 Texas, 636.

The question which we present to the court is as to whether the burden of proof in a contest of an affidavit of inability to pay cost on appeal is upon the party seeking to appeal or upon the contestant, and whether the mere filing of the statutory affidavit is, in the event of a contest, sufficient compliance with the statute requiring "strict proof" to authorize the appeal. That it was the intention of the statute to require the party seeking to appeal to make strict proof by evidence in open court, in the event of a contest, seems to us without question. Rev. Stats., art. 1401; Majors v. Goodrich, 68 S. W. Rep., 290; Pendley v. Berry, 95 Texas, 72; Thompson v. Hawkins, 38 S. W. Rep., 236; Graves v. Horn, 89 Texas, 78; Roberts v. Houston City St. Ry. Co., 35 S. W. Rep., 66; Harwell v. Southern Furniture Co., 75 S. W. Rep., 888.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

This writ of error is prosecuted from a judgment of the Court of Civil Appeals affirming a judgment of the District Court based upon the verdict of a jury denying plaintiff in error a recovery

in a suit brought by him against defendant in error for damages for a personal injury alleged to have been sustained by him while in the service of the defendant as a brakeman through its negligence. The defendant in error filed in the Court of Civil Appeals a motion to dismiss the appeal, which was overruled, and the motion is renewed here. The contention is that the appeal was never perfected so as to give jurisdiction to the Court of Civil Appeals or to this court. As it questions only the sufficiency of the proof made by the plaintiff of his inability to pay or secure the costs of appeal to entitle him to appeal upon affidavit instead of bond, it may be questionable whether or not it raises any question as to the jurisdiction of this court which can be made by such a motion, but waiving that we are of the opinion that the Court of Civil Appeals properly overruled the motion to dismiss. The plaintiff filed an affidavit in lieu of an appeal bond which stated all the facts required by the statute. This was all the proof of inability which the law required so long as it was uncontested. The defendant filed a paper, unverified by oath, which merely denied the statements of the affidavit and affirmed in general terms the ability of the plaintiff to give security for, or pay, the costs. No evidence, it is claimed, was offered by either party, and the proposition is that the burden was on the appellant, after the affidavit had been so contested, to offer further proof of inability. We do not think the effect of the affidavit could be destroyed in this way. While the statute does not prescribe the manner in which the affidavit may be contested, it does say that the proof of inability required shall consist of the affidavit. It then allows a contest of it and, when there is a contest, provides that it is the duty of the judge "to hear evidence and determine the right of the party to his appeal." This does not, in our opinion, entitle an appellee by an unverified general traverse to require of his adversary further proof than that already given and declared to be sufficient until contested. It is such affidavit that is to be contested, and it naturally follows that it is to be contested by something having probative force; otherwise it would be within the power of the appellee to destroy the effect given by the law to the affidavit without offering anything entitled to weight as evidence against it. Indefinite and incomplete as the provisions of the statute are, they are sufficient, in our opinion, to refute this contention. We have decided the question without determining whether or not it has been in all respects preserved upon the record as it should have been. It would seem, however, that to raise such a question properly, a bill of exception should have been taken to the action of the district judge showing what occurred at the hearing.

The plaintiff alleged that while he was assisting in turning a turn-table upon which a locomotive engine was standing by pushing it with the exertion of great force, the table, on account of its being defective, suddenly stopped and thereby caused the injuries complained of. The condition of the table was thus alleged: "The said turn-table was defective in its construction so that it would sometimes stop suddenly when being turned; that the said

turn-table was out of repair, so that it would sometimes stop suddenly when it was being turned; that it was defective in its construction, and was out of repair in that the ends of the table where it joined onto the tracks leading to and from the same were too long, and there was not sufficient space for said table to turn all the way round; and the ends of said table, or the turning part thereof were defective in construction and out of repair, so that when the said table was being turned they would catch and hang against the sides of said table. That a more accurate description of the defects in the construction of said turn-table, and a more accurate description of the parts of said table that were out of repair, and a more accurate description of the defective condition of the same can not be given at this time, because plaintiff is not informed thereof, and because he did not have an opportunity to inspect said turn-table after his injuries (and because the same has since been repaired)."

The evidence tended to show that on some occasions before that in question plaintiff had helped to turn the table and had no trouble in doing so and that he knew of nothing defective about it. His testimony tended to prove the occurrence as alleged, but it happened at night and he did not know what caused the table to stop, nor at what point in the circle it stopped, except that he thought it stopped "near the north end," by which we understand him to mean, near the point of its junction with the railroad track. He says, "what caused it to stop, it had gotten old and out of fix or something," but probably this is only his conjecture. His description of the occurrence makes it probable that the sudden stop was due to some obstacle encountered in the movement. The testimony of the only other witness upon the subject tended to show that the table was not entirely suited to the purpose for which it was used at the time in question. From this testimony it appears that the table had been built at a time when the railroad company used smaller engines than those in use at the time of plaintiff's alleged injury. The greater size and weight of the larger engines rendered the operation of turning them upon this table more difficult. This table, to quote the witness, "has always turned harder than ordinary." If the large engines were properly balanced upon the table they could be turned without hindrance, more force, of course, being required than in turning the smaller and lighter ones; but if a large engine was not so placed, it had a tendency to press the table downward at the ends so that its timbers sometimes came in contact with those of the railroad track, which caused it to stop. This had occurred not infrequently, it seems, and brakeman had often complained of the fact that the table was hard to turn. The stopping was, however, always due, the witness says, to improper balancing. Some tables had more space than others between the ends of their timbers and those of the tracks, and the witness says of this one that "when the engine is perfectly balanced between those head blocks there is not to say plenty of room." There is room for it to turn, but it has to be properly balanced to pass the head blocks, half an inch

or an inch making no appreciable difference. The witness further stated: "A table in good repair will not have to be in good balance before the head blocks will turn and not strike." This witness was the conductor under whom plaintiff was employed, and his only knowledge concerning turn-tables and their construction was derived from long service and frequent use of them in having engines pulling his trains turned upon them. He did not claim to have expert knowledge as to the manner in which they should be constructed other than that derived from the experience stated, and there was no other evidence upon the subject.

The uncontradicted evidence shows that engines are stopped upon turn-tables by engineers at points indicated by signals from brakemen, the engineers not being in a position to determine this for themselves, and that the duty of giving such signals on the occasion in question devolved upon plaintiff. It further appears that whether or not an engine is properly balanced can be seen, even at night, by carefully looking at it.

Errors were assigned by the plaintiff, in the Court of Civil Appeals, upon instructions given by the trial court, and, without determining whether or not the instructions were correct, the Court of Civil Appeals held that the plaintiff had shown no right to recover and, therefore, suffered no injury by the manner in which the trial court submitted the cause to the jury.

In support of this view it is contended that the evidence of which we have given a condensed statement, did not tend to show any negligence on the part of the defendant, or, at least, did not tend to show the negligence alleged. More particularly stated, this position is that the evidence failed to show that the turn-table was defective in its original construction, or that it had been allowed to become defective, or out of repair. If the condition of the table be considered with reference, alone, to the purposes for which it was originally designed, that is, the turning of the smaller engines formerly in use, this would doubtless be true. But this is not the whole of the question. The duty of the master is at all times to exercise ordinary care to furnish for the use of the servant safe and suitable machinery and appliances with which the servant is to do his work. Whether or not this duty has been performed must be determined by considering that which has been furnished in connection with the uses to which the servant at the time in question is expected to put it. A piece of machinery wholly suitable and adequate to the purposes for which it is used at one time, may be inadequate for other uses at different times, and when the latter condition exists, the machinery may well be said to be improperly constructed, defective or dangerous.

The evidence shows that the table was sufficient for the engines in use when it was constructed, but also tends to show that it was unfit, therefore improperly constructed and defective, for the use to which it was put, when plaintiff claims to have been hurt, in turning the larger and heavier engines. This was the work in which plaintiff was required to use it, and with reference to which the duty of the defendant existed. Because it may have

been sufficient for a different use, it can not be said, as matter of law, it was sufficient for this. It is urged that the evidence shows that it was sufficient, when properly used, for the turning of the larger engines and that its failure on this occasion was due to the improper placing of the engines upon it. We shall have more to say of this further on. It is enough to say, at this point, that the evidence presented the question, which was for the jury, whether the defendant may not have been guilty of negligence in putting plaintiff at work with this table, when, without his knowledge, its efficient and safe use required so nice a balancing of the engines as the evidence seems to indicate. This question is included in the more general one whether or not the table was reasonably safe, and, if not, whether or not defendant was guilty of negligence in having it in such use. So far, the allegations of the petition that the table was defective in construction is supported by evidence the weight and effect of which was for the jury to determine.

But it is said that the petition undertakes to specify in what the defects consisted and that the evidence does not sustain such allegations. The petition only attempts in a very general way to allege what the plaintiff was unable to allege more particularly. The table is alleged to have been defective in that it would sometimes stop suddenly when being turned, and in that its ends where it joined the track were too long, so that there was not sufficient space for it to turn all the way round. The testimony of the conductor is that this was its condition when weighted down with the large engines, and, as we have seen, the uses to which it was put are to be taken into consideration in determining whether it was defective or safe when so used. The evidence therefore tended to show the very condition alleged.

It is further contended that the plaintiff's testimony does not show that the table was caused to stop by those defects, and this may be conceded. But the testimony of the conductor shows that such occurrences had often happened from this cause, and there is nothing to indicate any other. Considering the testimony of the two witnesses together, a jury might reasonably infer that the injury to plaintiff was caused by the only obstacle to the movement of the table which the evidence shows to have existed.

Another position taken is that plaintiff's injury was caused by his own omission to see that the engine was properly balanced upon the table. There is nothing to show that he omitted to do what was proper, unless it be the fact that the table stopped. The testimony of the conductor indicates that this did not happen when engines were accurately placed, from which it may be inferred that the particular engine was not so placed, as to which fact the witness had no knowledge. But we have already endeavored to show that the evidence was not such as to require the jury to find that there was no negligence on the part of the defendant in having a table that required at the hands of its servants such accurate use as this contention would involve. The further questions suggested by this contention are as to contributory neg-

ligence and assumption of risk on the part of plaintiff. As to these the evidence does not show that such a placing of the engine as was necessary to the successful use of this table was required in the use of tables generally, but rather indicates the contrary. Nor does the evidence show, at least it does not conclusively show, that the plaintiff knew of the existence of the conditions which may have required greater nicety of observation in the use of this table than would be required with others, nor that he used less precaution in locating the engine than would ordinarily be prudent and sufficient. It therefore does not conclusively appear either that he was guilty of negligence, or that he assumed the risk.

We are not holding that a verdict for the defendant would not have been justified had the cause been properly submitted to the jury, but only that it can not be said, as matter of law, that the evidence compels such a decision.

It therefore remains to inquire whether or not the rulings of the trial court of which plaintiff complains were such as to require a reversal of the judgment. Among the charges given at the request of the defendant were the following:

"If you believe from the evidence that at the time plaintiff is alleged to have been injured, the plaintiff was attempting to turn an engine on the turn-table in question; and should further believe that said turn-table was defective and that by reason of any defect in said turn-table same was caused suddenly to stop; but should further believe that the condition of said turn-table and the amount of force and strength necessary to turn or move same were known to plaintiff, or in the ordinary discharge of his duties as an employee of the defendant must necessarily have been known to him, then and in such event you will find for the defendant."

"If you believe from the evidence that the turn-table which the plaintiff was undertaking to use at the time of his alleged injury was in any manner defective, but should further believe that such defect and the danger of attempting to turn said table was known to the plaintiff or in the ordinary discharge of his duty as an employee of the defendant company must necessarily have been known to him, then and in such event you will find for the defendant."

These instructions state substantially the law of assumed risk as it was before the passage of the Act of 1905 upon that subject. (Laws 29th Leg., p. 386.) That statute had taken effect a short time before the date when plaintiff claims to have received his injuries and applies to the case. Under one of its provisions an employe does not assume the risk of a defect or danger, known to him, "where a person of ordinary care would have continued in the service with knowledge of the defect and danger." This qualification was not 'stated in the charges given and the omission of it constitutes error for which the judgment must be reversed.

In another charge given at the request of defendant the court required that plaintiff prove that the turn-table was defective and

"out of repair." The latter expression when addressed to the evidence was calculated to mislead. The evidence did not tend to show that the table was out of repair, but that it was defective as being unsuited to the use to which it was being put.

Another special charge was as follows: "If you believe from the evidence that the turn-table which plaintiff was attempting to turn at the time he is alleged to have been injured was by reason of the size and weight of the engine upon it, hard to turn, but that the same was not defective in any way, then and in such event you will find for the defendant."

Of course it is true that if the table was not defective, when that term is properly understood, there was no negligence in so maintaining it, but as this charge is expressed it is likely to convey to the jury the idea that plaintiff could not recover if the size and weight of the engine made the table hard to turn, although it may have been unsuited to such use and for that reason defective, and this may have caused the injury to plaintiff. It should not be given in another trial.

There was evidence that many years ago plaintiff received an injury in the same leg for injury to which he prosecutes this suit and there was a question in the case as to how far the old injury affected his condition at the trial. The court gave this instruction: "In this connection you are charged that unless you believe from a preponderance of the evidence that the plaintiff was injured as alleged and that he was injured by the negligence of the defendant in the manner and in the respects mentioned in paragraph 4 of this charge, or, unless you believe from a preponderance of the evidence that he was not injured at some other time or in some other way or by some other means you will find for the defendant."

The literal effect of this is to entirely preclude plaintiff from recovering if he had been injured at any other time and place. Doubtless the trial court did not mean to give so sweeping an instruction and it may have been sufficiently corrected by special charge No. 4 given at the request of defendant. The instruction is assigned as error and we mention it in order that the mistake may be avoided if the case shall be tried again. Nothing further is presented that requires discussion.

*Reversed and remanded.*